# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JAVELL FOX,

                                        Plaintiff,

          v.                                              9:19-CV-498
                                                          (BKS/ATB)
BERNARD SHEFTIC,

                                        Defendant.

JAVELL FOX, Plaintiff, pro se
WILLIAM E. ARNOLD, IV, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In this civil rights complaint, plaintiff raises various constitutional claims related to his hair cut which arose during his incarceration at Auburn Correctional Facility ("Auburn"). (Complaint ("Compl.")) (generally).  Presently before the court is the defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 6).  Plaintiff has responded in opposition to the motion, and defendant has filed a reply. (Dkt. Nos. 10, 11).  For the following reasons, this court will recommend dismissing all but one of the plaintiff's causes of action.

## II.  Judgment on the Pleadings

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted). *See*

FED. R. CIV. P. 12(b), 12(c) and 12(h)(2).  The motion for judgment on the pleadings is then treated according to the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id*.

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted)*.

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d

Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court

may take into consideration documents referenced in or attached to the complaint in

deciding a motion to dismiss, without converting the proceeding to one for summary

judgment).

Finally, the court may consider matters of which judicial notice may be taken,

such as public filings and administrative decisions. *See Kavowras v. New York Times,*

*Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian*

*Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of

NLRB decisions)).  *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d

Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as

certain other documents in the administrative record of an IDEA case); *In re Howard's*

*Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy

Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL

3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior

litigation between the same parties).

## III.  **Facts and Contentions**

Plaintiff states that on August 29, 2018, he was incarcerated at Auburn, when

defendant Sheftic approached plaintiff about his "Mohawk-style" hair cut. (Compl.

Facts ¶ 1).  Plaintiff states that he showed defendant Sheftic a court order from the

Northern District of New York, "permitting plaintiff to have a [M]ohawk and

restraining all state prison correction employees from punishing him for wearing his

Mohawk hairstyle." (*Id.*)

Plaintiff claims that on August 30, 2018, defendant Sheftic stopped plaintiff in the yard and told plaintiff that defendant Sheftic knew "all about plaintiff's lawsuit and things won't be easy." (Facts ¶ 2).  Plaintiff states that defendant Sheftic told him that he did "not care about his court order," and if plaintiff did not cut his hair, he would be keeplocked.[1]  Plaintiff stated that he refused to cut his hair and informed defendant Sheftic that plaintiff's "hair [was] a sincerely held religious symbol as well as a freedom of expression right under the Freedom of Speech." (Facts ¶ 3).

Plaintiff states that, notwithstanding this discussion, defendant Sheftic placed plaintiff in keeplock confinement. (Facts ¶ 4).  Plaintiff states that he wrote to defendant Sheftic's supervisor and to the New York State Attorney General. (*Id.*)  As a result, plaintiff was released from keeplock confinement on September 2, 2018, "per court orders given to the Attorney General." (*Id.*)  Plaintiff states that there are other prisoners at Auburn who wear Mohawk hairstyles, who were seen by defendant Sheftic "every day," and who were "never" punished for their hairstyles.[2] (Facts ¶ 5).

---

[1] "Keeplock" is confinement to one's own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

[2] Plaintiff has attached two affidavits to his response papers. (Pl.'s Exs. A & B) (Dkt. No. 10 at 9-11).  Plaintiff's Exhibit A is an affidavit from another inmate who states that he has been wearing a Mohawk hairstyle at Auburn for four years and has never been punished or harassed for his haircut. (Dkt. No. 10 at 9).  Plaintiff's Exhibit B is an affidavit is from another inmate, who states that he overheard officers saying that plaintiff was "keeplocked for his Mohawk hairstyle." (Dkt. No. 10 at 11).  The court notes that a motion for judgment on the pleadings, like a motion to dismiss for failure to state a claim must be decided on the pleadings alone, together with the exceptions noted above.  If the court were to consider matters outside the pleadings, the court would be required to convert the motion to one for summary judgment and allow the parties time to respond or to add further evidence. Fed. R. Civ. P. 12(d), 56.  Neither affidavit submitted by plaintiff needs to be considered by the court in relation to the defendant's motion because the court has already assumed the fact asserted in the affidavits to be true. The first affidavit repeats what plaintiff has already alleged in his complaint (that other inmates wear Mohawk hairstyles without punishment), and this court must accept this as true in a motion for judgment on the pleadings.  The second affidavit is from another inmate who states that he

4

The complaint contains nine causes of action ("COA") against defendant Sheftic, several of which are duplicative, but the court will list them separately for clarity:

(1)    Harassment, in violation of the Eighth Amendment;

(2)    Cruel and Unusual Punishment in violation of the Eighth Amendment;

(3)    Violation of plaintiff's Freedom of Speech/Expression;

(4)    "Discrimination;"

(5)    Violation of plaintiff's Freedom of Religion:

(6)    Violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a);

(7)    Violation of plaintiff's right to Equal Protection;

(8)    "Discrimination;" and

(9)    Retaliation.

(Compl. at pp.2-4). Plaintiff seeks substantial monetary relief. (*Id.*)

## IV.    **Eight Amendment/Harassment (COAs ## 1 & 2)**

### A.    **Legal Standards**

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's

---

saw plaintiff on keeplock, but then contains complete hearsay, (his overhearing unnamed officers discussing the reason for the keeplock), that would not be appropriate even in support of a motion for summary judgment. This is also a fact alleged in the complaint which this court has accepted as true for purposes of the defendant's motion. Thus, this court need not convert the defendant's motion to one for summary judgment and has not considered the two affidavits submitted by plaintiff in his response.

necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (alterations in original).  However, verbal harassment, no matter how inexcusable it may be, does not rise to the level of a constitutional violation.  *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).

### B.    Application

Plaintiff does not associate any of his COAs to specific factual allegations in his complaint.  Thus, the court must attempt to make that determination.  Plaintiff's first cause of action states that defendant Sheftic harassed plaintiff in violation of the Eighth Amendment.  To the extent that plaintiff claims verbal harassment, associated with his factual allegations that defendant Sheftic verbally harassed plaintiff about his hairstyle, told him that he did not care about his lawsuit, or told him that things were not going to be "easy," this first COA must be dismissed, regardless of whether defendant Sheftic was harassing plaintiff about his hair or his religion.  Verbal harassment is not a violation of the Eighth Amendment. *Purcell, supra.*

To the extent that plaintiff claims that his placement in keeplock somehow violated the Eighth Amendment, such a COA would have to be dismissed.  At most, plaintiff was confined to his own cell for three days.  Plaintiff has failed to allege any facts that plausibly allege that the conditions of his keeplock were 'sufficiently serious'

6

to meet the objective prong of an Eighth Amendment claim.[3]  He has not alleged, plausibly or otherwise, that the conditions in his own cell were so bad that he was denied the minimal civilized measure of life's necessities.

Plaintiff's response to the defendant's motion argues that both the verbal harassment and the confinement violated the Eighth Amendment, citing *Webster v. Fischer*, 694 F. Supp. 2d 163 (N.D.N.Y. 2010).  *Webster* does not stand for the proposition made by plaintiff.  In fact, *Webster* states specifically states that section 1983 "is not designed to rectify harassment or verbal abuse." *Id.* at 187 (citing *Purcell v. Coughlin*, 790 F.2d at 265; *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); *Alnutt v. Cleary*, 913 F. Supp. 160, 165–66 (W.D.N.Y. 1996) (citations omitted)).  The court in *Webster* granted the defendants' motion for summary judgment. *Id.*

Plaintiff attempts to claim that the harassment and the confinement caused him "mental anguish."  However, "mental anguish" is not the type of injury that would rise to the level of an Eighth Amendment violation. *See Torres v. Aramark Food*, No. 14-CV-7498, 2015 WL 9077472, at *8 (W.D.N.Y. Dec. 16, 2015) (mental anguish, without more, does not implicate the objective prong of the Eighth Amendment analysis); *Webster*, 694 F. Supp. 2d at 187 (plaintiff did not allege any "physical injury" or pain as the result of the harassment).  Plaintiff now claims that he suffered headaches, back pain, and emotional anguish. (Pl.'s Mem. at 2).  However, as defendant

---

[3] In *McDonald v. Rivera*, No. 9:06-CV-410, 2008 WL 268345, at *8 (N.D.N.Y. Jan. 8, 2008), the court held that thirty (30) days in keeplock, under normal conditions did not violate the inmate's Eighth Amendment rights.

points out, plaintiff never mentioned "back pain" or other injuries in his complaint. To the extent that he alleges that he suffered some sort of physical injury as a result of being keeplocked for three days, that allegation is not "plausibly" related to the defendant's alleged harassment. *Id.* Thus, plaintiff's first two causes of action may be dismissed on the pleadings.

## V.    <u>"Discrimination"/Equal Protection (COAs # 4, 7, 8)</u>

### A.    Legal Standards

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 600-601 (2008). To establish an equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006). Plaintiffs must first show that they were treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, plaintiffs must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

### B.    Application

In his fourth and eighth COAs, without further explanation, plaintiff simply states "Sgt. Sheftic Descrimination [sic]." However, these two COAs are duplicative of

8

plaintiff's seventh COA which alleges "Sgt Sheftic -  Equal Protection of law violation." (Compl. at 3-4).  Plaintiff alleges only that "other" inmates were allowed to wear Mohawk hairstyles without "punishment."  The only similarity between plaintiff and these "other" inmates appears to be their hairstyle.  Plaintiff does not allege that the other inmates belonged to a different religion and were allowed to wear the Mohawk hairstyle.  Thus, he does not allege that the discrimination was based on his "religion."[4] *See Barnes v. Fedele*, 760 F. Supp. 2d 296, 301-302 (W.D.N.Y. 2011) (nothing in plaintiff's complaint suggested that any similarly situated inmates of a different faith were treated more favorably or that plaintiff was "singled out" for discriminatory treatment on account of his religion - dismissing equal protection claim as duplicative of plaintiff's free exercise claim).

Plaintiff also appears to claim, that the defendant keeplocked him, either for exercising his First Amendment right to wear his Mohawk for religious reasons, or keeplocked him in retaliation for having a pending lawsuit, then plaintiff has stated a First Amendment religion claim or a First Amendment retaliation claim.  Plaintiff's Equal Protection claim is duplicative of his First Amendment claims and thus, may be dismissed. *Id.  See also New Hope Family Svcs., Inc. v. Poole*, 387 F. Supp. 3d 194, 222 (N.D.N.Y. 2019) (dismissing duplicative equal protection claim) (citing inter alia *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that courts should analyze

---

[4] A valid Equal Protection claim may be brought by a "class-of-one" in which the plaintiff alleges that he or she has been intentionally treated differently from others similarly-situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  However, plaintiff seems to focus more on the alleged First Amendment and Religious bases for his claim.  Thus, the court will recommend dismissing the Equal Protection and "discrimination" claims, while focusing of the identical claims under the First Amendment.

similar claims under the "'most explicit source[s] of constitutional protection'".)
Thus, plaintiff's fourth, seventh, and eighth COAs may be dismissed.

## VI.    **RLUIPA (COA # 6)**

### A.    **Legal Standards**

In addition to the First Amendment right to practice one's religion, RLUIPA

protects inmates' religious rights.  RLUIPA  prohibits the government from imposing a

substantial burden on a prisoner's religious exercise unless the burden is the least

restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C.

§ 2000cc-l(a).  For a burden to be substantial, a plaintiff must demonstrate that the

government's action pressures him to commit an act forbidden by his religion or

prevents him from engaging in conduct or having a religious experience mandated by

his faith.

In addition, this interference must be more than an inconvenience; the burden

must be substantial and must interfere with a tenet or belief that is central to religious

doctrine. *Pugh v. Goord*, 571 F. Supp. 2d 477, 504-05 (S.D.N.Y. 2008); *Graham v.

Mahmood*, No. 05–10071, 2008 WL 1849167, at *14 (S.D.N.Y. Apr. 22, 2008); *Gill v.

Defrank*, No. 98 Civ. 7851, 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000) (citing

*Boomer v. Irvin*, 963 F. Supp. 2d 227, 230 (W.D.N.Y. 1997)).   However, "RLUIPA

does not authorize claims for monetary damages against state officers in either their

official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014)

(citing *Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam)).

### B.    Application

In this case, plaintiff was never made to cut his hair, and by his own statement, he was released from keeplock on September 2, 2019, having spent only three days confined to his own cell without "privileges." Thus, even assuming that plaintiff had a claim for injunctive relief against defendant Sheftic, that claim would be moot. Thus, plaintiff's sixth cause of action may be dismissed.

## VII.    <u>Qualified Immunity</u>

### A.    Legal Standards

The doctrine of qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining if a particular right was clearly established, the court "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *K.D. ex rel Duncan v. White Plains School Dist.*, No. 11 Civ. 6756, 2013 WL 440556, at *10 (S.D.N.Y. Feb. 5, 2013) (citing *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)). The court must ask whether the right at issue was established "'in a particularized sense so that the contours of the right [were] clear to a reasonable official'" in light of the specific context of the case, "not as a broad general proposition." *Id*. (citing, *inter alia, Reichle v. Howards*, 566 U.S. 658, 665 (2012)). *See also Rose v. City of Utica*, No. 18-1491, __ F. App'x __, 2019 WL 4668332 (2d Cir.

Sept. 25, 2019).

A case directly on point is not required, and the question is not whether an attorney would learn about the right from researching case law, but whether existing precedent has "placed the statutory or constitutional question beyond debate." *Id*. (citing, *inter alia, Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012)). An officer cannot have violated a "'clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it . . . .'" *Rose*, 2019 WL 4668332, at *1 (quoting *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015)). Only Supreme Court and Second Circuit precedent, existing at the time of the alleged violation, are relevant in deciding whether the right is well established. *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

The Supreme Court has also instructed that courts should not "'define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Duffy v. Wallace*, 737 F. App'x 591, 592 (2d Cir. 2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quoting *Ashcroft v. al Kidd*, 563 U.S. 731, 742 (2011)) (internal quotation marks omitted). Because qualified immunity is "'an immunity from suit rather than a mere defense to liability,'" the Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citations omitted).

### B.    Application

### 1.    Religion (COA # 5)

Defendant argues that he should be entitled to qualified immunity from a First Amendment religion claim because it has not been well-established that plaintiff's religion - Anunnaki - is recognized by DOCCS or that adherents of that religion are allowed to wear Mohawk hairstyles.  The proposition that prison inmates retain First Amendment religious rights, in general, have long been well-established. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

Defendant argues that plaintiff does not state in this case[5] what his religion is or what the Mohawk hairstyle is a symbol of, making defendant Sheftic's alleged conduct reasonable.  However, the Second Circuit has held that even religious authorities' "opinion" that a particular practice was not religiously mandated, without more, was insufficient to render the defendants' conduct "reasonable." *Ford*, 352 F.3d at 598. This is true because the important question was whether the activity was "central or important to Ford's practice of Islam." *Id.* at 594.  The proper inquiry was always "whether Ford's belief was sincerely held and 'in his own scheme of things, religious.'" *Id.* at 598.  The court in *Ford* also stated that the court need not have ruled for the plaintiff in ***exactly*** the same factual circumstances in order for right to be clearly established. *Id.* at 597.

In this case, plaintiff showed defendant a court-ordered stipulation which would

---

[5] In the case before Judge McAvoy, *Fox v. Lee*, plaintiff alleged that he practiced the Anunnaki religion.  As stated above, this court may take judicial notice of the documents filed in *Fox v. Lee*.

have allowed plaintiff to maintain his current hairstyle, pending the outcome of a particular lawsuit involving plaintiff.  While defendant correctly argues that a court-order does create "well-established" law, the case to which he cites involves a general "settlement" agreement by which DOCCS agreed to recognize a particular religion and treat its adherents as it would the adherents of any other religion. (Def.'s Mem. at 12-13) (citing *Allah v. DePaolo*, No. 17-CV-6313, 2019 WL 1367608, at *7-8 (S.D.N.Y. Mar. 26, 2019), *vacated in part on reconsideration on other grounds*, 2019 WL 1649021 (S.D.N.Y. Apr. 4, 2019).

In this case, while Judge McAvoy's court-ordered stipulation did not create "well-established" law with respect to religious rights,[6] it was certainly an order that allowed this particular plaintiff to maintain his hairstyle for whatever reason. Defendant is also correct that there appear to be no cases, recognizing the Anunnaki religion, nor are there any Second Circuit or Supreme Court cases finding that individuals of the Anunnaki religion wear their hair in a Mohawk style.[7]  However, the Second Circuit has consistently held that the First Amendment was meant to protect all religious beliefs - "both traditional and non-traditional . . . ." *Ford*, 352 F.3d at 598. *See Breland v. Goord*, No. 94 Civ. 3696, 1997 WL 139533, at *4 (S.D.N.Y. Mar. 27, 1997) (holding that the court's scrutiny extends only to whether a claimant sincerely holds a

---

[6] In fact, as defendant points out, the stipulation specifically stated that defendants in *Fox v. Lee* were simply agreeing that plaintiff could maintain his current hairstyle pending the outcome of the litigation and did not concede that plaintiff's hairstyle was "based on a sincerely held belief of a religious nature." (Dkt. No. 6-2 ¶ 2).

[7] There appear to be no federal cases that mention the Anunnaki "religion" at all in New York or in any other federal jurisdiction.

14

belief and whether the belief is religious in nature). Thus, the fact that the Anunnaki religion may not be "recognized" by DOCCS does not afford this defendant qualified immunity, making his conduct reasonable, particularly given his knowledge that a lawsuit was pending over the very issue. Thus, this court will not recommend granting defendant's motion for judgment on the pleadings, asserting qualified immunity.

### 2. Freedom of Speech (COA # 3)

The court notes that plaintiff includes a claim that his Freedom of Speech was violated by the defendant's conduct. Plaintiff's claim is that he is entitled to wear his hair in a Mohawk style because of his religion. Thus, plaintiff's First Amendment religion and speech claims are duplicative and may be decided based upon plaintiff's claim that his right to practice his religion has been violated. *See Graham v. Connor, supra* (courts should analyze similar claims under the "'most explicit source[s] of constitutional protection.'")

## VIII. Retaliation (COA # 9)

### A. Legal Standards

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendant. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.

2004) (citations omitted).  The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action.  *Id.* at 380.  The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration."  Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim.  *Bennett*, 343 F.3d at 137.

### B.    Application

Plaintiff's ninth COA simply states "Sgt. Sheftic Retaliation." (COA # 9) (Compl. at 4).  However, the body of the complaint states that because "plaintiff has a lawsuit pending pertaining to his hairstyle, Sgt. Sheftic used keeplock as a form of retaliation . . . ." (Compl. at 2, ¶ 6).  It thus appears that plaintiff's retaliation claim is related to his pending lawsuit, not to the merits of his religion claim.  The defendant could be liable for "retaliation," regardless of the success or failure of *Fox v. Lee*.  The constitutional right in question is plaintiff's right to bring a lawsuit, which is clearly constitutionally protected conduct. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 382 (2011) (*"*Among other rights essential to freedom, the First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances.' U.S. Const., Amend. 1.")

Plaintiff alleges that after he showed defendant Sheftic the stipulated order, the next day, defendant Sheftic stated that he knew all about plaintiff's lawsuit, and that "things would not be easy," and that he did not "care about his court order." (Compl. at 1, ¶¶ 1-3).  As stated above, the verbal harassment is not actionable, but arguably, if

16

defendant Sheftic punished plaintiff intentionally by putting him in keeplock because he had a pending lawsuit about his religious beliefs, plaintiff has established the first two prongs of the retaliation analysis.

The final question is whether plaintiff has alleged sufficient "adverse action" to meet the third prong of the retaliation analysis. Defendant does not address this argument.[8] The only "adverse action" alleged by plaintiff is his confinement to keeplock between August 30, 2018 and September 2, 2019 when he was released from the restrictive confinement after his letters to defendant's "supervisor" and the "Attorney General." The question for the retaliation analysis is whether the three days in keeplock confinement, without privileges, and without the ability to "contact" his family constitutes adverse action, sufficient to state a retaliation claim.

The case law on this subject is not completely clear or consistent in its findings regarding such confinement. Although it is clear that "confinement" to more restrictive conditions, transfer to another facility, or lengthy confinement may constitute adverse action, the cases vary in their opinions of how long the keeplock confinement must be before it passes the threshold of "adverse action." *See Flood v. Cappelli*, No. 18-CV-3897 (KMK), 2019 WL 3778736, at *7 (S.D.N.Y. Aug. 12, 2019) (citing inter alia *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (holding that placing plaintiff

---

[8] Defendant argues only that he is entitled to qualified immunity on the religion and retaliation claims. However, "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001). Thus, if it is determined that the defendant intended to retaliate against plaintiff for the exercise of his constitutional right to bring a lawsuit asserting his religious rights, it would not have been "objectively reasonable" for him to do so. Thus, this court will not find at this stage of the proceedings, that defendant is entitled to qualified immunity on the retaliation claim.

in keeplock for three weeks was an adverse action); *Lugo v. Van Orden*, No. 07-CV-879, 2008 WL 2884925, at *4–5 (S.D.N.Y. July 23, 2008) (assuming that placing plaintiff in keeplock for five days constitutes an adverse action, stating that the holding of Gill was not that confinement must have lasted for weeks, and pointing out that "less adverse" action such as being moved to a different housing unit have been held to be sufficient to state a claim for retaliation); *Keesh v. Goord*, No. 04-CV-271, 2007 WL 2903682, at *10 (W.D.N.Y. Oct. 1, 2007) (holding that placing plaintiff in keeplock for one day during which he may have missed meals constituted an adverse action)).

The court in *Flood* also cited *Hayes v. Dahkle*, No. 16-CV-1368, 2018 WL 7356343, at *15 (N.D.N.Y. Dec. 11, 2018) as "assuming" that one day in keeplock constituted adverse action. However, the court in *Hayes*, while citing some of the same cases cited above, actually stated that "the undersigned ***declines to conclude*** that C.O. Hoffman's May 15, 2016 misbehavior report that resulted in one-day confinement in keeplock constituted an adverse action." The court in *Keesh v. Goord, supra* did hold that a one day confinement rose to the level of adverse action, in part, because the plaintiff could have also been deprived of meals during that time. The other cases cited above involved longer periods of confinement. Because the district courts are split on this issue, and it appears to be based, in part, on the deprivations suffered, this court declines to recommend dismissal on the pleadings of the plaintiff's ninth cause of action alleging retaliation for filing a lawsuit asserting his First Amendment right to practice his religion. This recommendation would not foreclose defendant from

bringing a properly supported motion for summary judgment based on this or other bases for dismissal.[9]

    **WHEREFORE**. based on the findings above, it is

    **RECOMMENDED**, that defendant's motion for judgment on the pleadings (Dkt. No. 6) be **DENIED WITHOUT PREJUDICE with respect to plaintiff's Fifth COA, alleging a First Amendment Religion claim and his Ninth COA, alleging Retaliation for filing *Fox v. Lee***, and it is

    **RECOMMENDED**, that defendant's motion for judgment on the pleadings (Dkt. No. 6) be **GRANTED IN AS TO ALL OTHER COAs,** and that the complaint be dismissed as to COAs ## 1-4, and 6-8.

    Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: October 3, 2019

*Andrew T. Baxter*

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

[9] The court notes that plaintiff's Freedom of Religion claim was dismissed by Judge McAvoy for failure to exhaust plaintiff's administrative remedies. In this case, defendant has not argued failure to exhaust, but in plaintiff's response to the defendant's motion, he concedes that he did not exhaust his administrative remedies with respect to the claims in this action. (Dkt. No. 10 at 3-4). Plaintiff explained his justification for failing to do so. This court makes no finding on the merits of such a basis for dismissal. Because failure to exhaust is an affirmative defense that must be raised by defendant, this court will not address the issue sua sponte.