# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JAVELL FOX,

                                    Plaintiff,

        v.                                          9:19-CV-498
                                                    (BKS/ATB)

BERNARD SHEFTIC,

                                    Defendant.

---

JAVELL FOX, Plaintiff, pro se
WILLIAM E. ARNOLD, IV, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In this civil rights complaint, plaintiff raises various constitutional claims related to his hair cut which arose during his incarceration at Auburn Correctional Facility ("Auburn"). (Complaint ("Compl.") (generally).  Presently before the court is the plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56 and the defendant's response and cross-motion for the same relief. (Dkt. Nos. 29, 39).  Plaintiff has failed to respond to the defendant's cross-motion, despite being given two extensions of time to do so. (Dkt. Nos. 45, 47).

## I.    __Procedural History__

Plaintiff filed his original complaint in New York State Supreme Court, Cayuga County.  Defendant removed the action to the Northern District of New York on April 26, 2019. (Dkt. Nos. 1, 2).  On May 16, 2016, defendant moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 6).  On October 3, 2019, I issued

a Report-Recommendation, in which I recommended denying the defendant's motion without prejudice as to the plaintiff's First Amendment Religion and Retaliation claims, but that the motion be granted in all other respects. (Dkt. No. 13). The Honorable Brenda K. Sannes, United States District Court Judge adopted my Report-Recommendation on October 30, 2019. (Dkt. No. 15).

On November 25, 2019, plaintiff filed an amended complaint. (Dkt. No. 16). After reviewing the amended complaint, Judge Sannes issued an order, dated January 24, 2020, in which she accepted the amended complaint as the operative pleading and held that the following survived review: (1) a First Amendment Religion claim; (2) a First Amendment Retaliation claim; and (3) a Fourteenth Amendment Equal Protection claim. (Dkt. No. 19).

On July 2, 2020, plaintiff moved for summary judgment. (Dkt. No. 29). After some discovery, including plaintiff's deposition, on August 17, 2020, defendant filed his response to plaintiff's motion and cross-moved for summary judgment. (Dkt. No. 39). On August 26, 2020, plaintiff asked for an extension of time to respond to defendant's motion, but also asked permission to file a second amended complaint. (Dkt. No. 43). The defendant opposed plaintiff's request to file a second amended complaint. (Dkt. No. 44). On August 28, 2020, I granted plaintiff an extension of time to respond to the defendant's summary judgment motion. I noted that the time for a motion to amend had expired, but informed plaintiff that I would entertain a proper motion to amend the complaint, complete with a proposed amended complaint, and a specific assertion of good cause for failing to meet the scheduling order deadline for

amendment. (Dkt. No. 45).

Although plaintiff did not thereafter file a motion to amend, he did request another extension of time to respond to the defendant's motion, which I granted on October 5, 2020. (Dkt. No. 47).  In my October 5th order, I reiterated that the deadline for amendment in the scheduling order had expired and would not be reset, plaintiff was free to file a proper motion to amend. (*Id.*)  The deadline that I set in my October 5th order expired on November 2, 2020. (*Id.*)  Plaintiff has neither responded to the defendant's motion, nor has he filed a motion to amend.  Thus, I will proceed to consider the defendant's arguments without opposition from the plaintiff.

## II.  <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving

3

party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule N.D.N.Y. 7.1(a)(3). The local rules require ***specific citations*** to the record where those facts are established. *Id.* The local rules also require that a party who moves for summary judgment file a memorandum of law and a supporting affidavit. Local Rule N.D.N.Y. 7.1(a).

## III.  <u>Amended Complaint</u>[1]

Plaintiff states that "on or around August 29, 2018," he was approached by defendant Sheftic "about [plaintiff's] hairstyle which is a Mohawk hairstyle." (Amended Complaint ("AC") ¶ 1) (Dkt. No. 16). Plaintiff states that he showed defendant Sheftic a court order which allowed plaintiff to wear his hair in a Mohawk

---

[1] I will only discuss the facts in the amended complaint relative to the remaining claims as noted above.

4

and prohibited corrections personnel from punishing plaintiff because of his hair. (AC ¶ 2).

Plaintiff alleges that on August 30, 2018, defendant Sheftic again stopped plaintiff in the yard and told plaintiff that he was aware of plaintiff's lawsuit, and things would not be "easy." (AC ¶ 3). Defendant Sheftic allegedly told plaintiff that he did not care about his court order, and that he would keeplock[2] plaintiff if he did not cut his hair. (AC ¶ 4). Plaintiff states that he refused to cut his hair because it is a "sincerely held religious symbol." (*Id.*) Plaintiff states that on August 30, 2018, he was "in fact keeplocked by Sergeant Sheftic." (AC ¶ 6). Plaintiff states that he wrote to defendant's supervisor and to the Attorney General, and that he was released from keeplock on September 2, 2018 by order of the Attorney General. (*Id.*)

Plaintiff states that Jewish, Muslim, Rastafarian, and Native American inmates are allowed to wear "their religious hairstyles" without harassment or punishment by defendant Sheftic. (AC ¶ 5). Plaintiff states that he is "singled out" while inmates of other religions are allowed to "enjoy their religious tenets." (*Id.*) In another section of the amended complaint, plaintiff states that Caucasian inmates are allowed to wear their "race cultural hairstyles," but African Americans get singled out and have to go to court to wear "dreadlocks and corn row braids." "[P]laintiff is singled out for wearing an African American Mohawk Hairstyle, . . . derived from Africa and is not only religious but based in free cultural expression." (AC ¶ 8). Plaintiff states that the Governor passed a bill recognizing the discrimination and allowing New York State prison

---

[2] Keeplock is a form of disciplinary confinement whereby an inmate is confined to his own cell for a period of time. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

inmates to wear their hair any way they choose. (*Id.*)

## IV.    **Plaintiff's Summary Judgment Motion**

Defendant correctly argues that the plaintiff's motion for summary judgment is procedurally incorrect.  Most importantly, the motion does not contain a statement of material facts that plaintiff claims are not in dispute. (Dkt. No. 29).  As noted by defense counsel, plaintiff is well-aware of the requirements of Local Rule 7 because he is not new to litigation and has made motions for summary judgment in the past. *See e.g. Fox v. Lee*, No. 9:15-CV-390 (Dkt. No. 113) (accepting plaintiff's memorandum of law, which contained a statement of material facts - "out of extreme solicitude" for plaintiff's pro se status).  Although pro se litigants are given special solicitude, they are still required to follow the court's rules of practice, particularly when they are aware of them. *See Porter v. Uhler*, 790 F. App'x 329, 330 (2d Cir. 2020) (citing inter alia *LoSacco v. Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (even pro se litigant is required to inform him or herself of the rules and comply with them)).

The court could recommend denying the plaintiff's motion based on procedural grounds alone.  However, given that the defendant has cross-moved for summary judgment, the court will analyzed the defendants arguments in conjunction with the plaintiff's "motion."

## V.    **Exhaustion of Administrative Remedies**

### A.    **Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil

rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), abrogated on other grounds by *Ross v. Blake,* 380 F. 3d. 670 (2004)  (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly

affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).  There is also a special section for complaints of harassment.  *Id*. § 701.8.  Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement.  *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016).  "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857).  Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid.  The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and

"estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id; see also Riles*, 2016 WL 4572321 at *2.

### B.    Analysis

In this case, there is no question that plaintiff's remedies were "available," that he was well aware of how to use the grievance program, and in fact, filed a grievance that was substantially[3] granted by the IGRC on September 20, 2018.[4] (Declaration of Cheryl Parmiter, IGP Supervisor, Ex. A). Defendant argues that, the plaintiff's grievance did not mention either retaliation or equal protection, and thus, neither of those claims has been exhausted.

"Although a plaintiff need not specifically articulate his claims in grievances in the exact same manner that he articulates them in federal court, he is required to give notice to the defendants about the factual basis of his claims." *Edwards v. Melendez*,

---

[3] The IGRC response reads as follows:

> According to the investigation, Directive 4914, Inmate grooming standards establishes the basic grooming standards and, [sic] Officers utilize this Directive and others in order to effectively do their jobs. It is recommended that grievant carries a copy of the Federal Court Order . . . on his person and show it to staff whenever questioned. Grievant's religious practices should not be in question whenever grievant chooses to leave his cell. Grievance is granted to that extent.

(Parmiter Decl. Ex. A at CM/ECF p.2). The investigative report also states that it is impossible for every officer to "know who you are" because there are so many inmates at Auburn, and that was the reason for advising plaintiff to carry his court order with him. (*Id.* at CM/ECF p.4).

[4] Even though the grievance was not granted until September 20, 2018, plaintiff was released from keeplock only three days after the confinement was imposed.

No. 19-753, 2020 WL 6154890, at *2 (2d Cir. Oct. 21, 2020) (citing *Espinal v. Goord*, 558 F.3d 119, 127-28 (2d Cir. 2009); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).  Plaintiff's grievance, which is also attached to the Parmiter Declaration, is dated August 27, 2018 and states that he is constantly being "harassed by correction officials about my Mohawk that I have a federal court order to have as I have shown all Sgts. on D-Block, C-Block and A and E-Block.  There should be no reason for officers to say anything to me about my hair." (Parmiter Decl. Ex. A at CM/ECF at 3).  Plaintiff's requested relief was that officers "leave me alone about my hair and stop this race bashup [sic] or cultural bashing.  I am Anunnaki and I request for my religion to be respected. My haircut is a symbol of my religious belief and my personal choice." (*Id.*)

The grievance does not mention defendant Sheftic, does not mention retaliation, and does not mention that he is being treated differently than inmate of other religions, and he does not mention keeplock.  He is merely complaining that the officers are questioning his haircut and "harassing" him, notwithstanding his court order.  While this statement may be specific enough to exhaust a First Amendment freedom of religion claim, it is insufficient to exhaust his retaliation or equal protection claims against this defendant.  The retaliation claim is based on plaintiff's allegation that he was punished, or placed in keeplock, because of the lawsuit which resulted in Judge McAvoy's order.

This finding is supported by the date of plaintiff's grievance.  The grievance is dated August 27, 2018.  Plaintiff alleges that he first spoke to defendant Sheftic on August 29, 2018, and he was placed in keeplock on August 30, 2018. (AC ¶ 1).

Defendants have filed the declaration of Corrections Officer Richard C. Pflueger, who states that, he, not defendant Sheftic, ordered plaintiff to be keeplocked on August 29, 2018, after previously warning plaintiff about his hair.[5] (Pflueger Decl. ¶¶ 4-8, & Def.'s Ex. 12 - Keeplock Log). Defendant Sheftic has filed an affidavit, stating that he met plaintiff on August 16, 2018 and told him that he would have to bring his haircut into compliance with Directive 4914, but did not threaten him with any disciplinary action. (Sheftic Decl. ¶¶ 3, 4) (Dkt. No. 39-7). Defendant states that plaintiff never told him that his haircut was a religious symbol or showed him any court order or other legal document. (Sheftic Decl. ¶¶ 5, 6). The defendant states had no further contact with the plaintiff about his hair after August 16th and was not involved in the August 29th misbehavior report and keeplock placement. (Sheftic Decl. ¶ 7).

Plaintiff could not have been complaining on August 27th about alleged retaliation that had not yet occurred against an officer who was not involved in placing him in keeplock. While a First Amendment religion claim is arguably exhausted,[6] neither his retaliation, nor his equal protection claims were exhausted by his August 27th grievance. Clearly, the response by the IGRC did not address either issue, and to the extent that plaintiff was trying to raise such claims, he could have appealed the partially granted grievance. However, he did not appeal any part of the IGRC's

---

[5] I will discuss personal involvement further below.

[6] Defendant Sheftic has stated that he saw plaintiff on August 16th and mentioned that he would need to cut his hair to comply with Directive 4914. Thus, the statement in his grievance that officers were "harassing" him about his hair could include defendant Sheftic's August 16th statement. The court will discuss this issue further below.

decision.[7] (Parmiter Decl. ¶ 8). Plaintiff did not file any subsequent grievances after the August 27, 2018 grievance relating to his haircut or retaliation and equal protection relating to his haircut. (Parmiter Decl. ¶ 6). Plaintiff has not responded to the defendant's motion to contradict any of the facts defendant Sheftic asserts in his motion and has shown by admissible evidence to be true. Thus, plaintiff has failed to exhaust two of his three claims, and the court may recommend dismissal of his retaliation and his equal protection claims based on the failure to exhaust.

When a plaintiff fails to exhaust his administrative remedies, the court must dismiss the action without prejudice so that the plaintiff may complete the exhaustion process and re-file his action, unless the time permitted for filing a grievance or appeal has finally expired. *See Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008) (upholding dismissal of a civil rights action with prejudice where the time permitted for filing a grievance had expired because "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies") (citation omitted). In this case, the incident in question occurred more than two years ago, plaintiff is now in a different facility, and there is no justification for plaintiff's failure to file any grievance regarding what he viewed as retaliation for filing a previous lawsuit or for complaining that defendant was treating him differently than he treated other inmates of different religions. Thus, I may recommend dismissal with

---

[7] Defendant has also filed the declaration of Rachael Seguin, Assistant Director of the IGP for the Department of Corrections and Community Supervision ("DOCCS"). (Seguin Decl.) (Dkt. No. 39-13). Assistant Director Seguin is the custodian of CORC records and states that plaintiff has never appealed any grievance alleging retaliation in connection with his August 29th keeplock placement or any equal protection violation based on unequal treatment of other inmates or the haircuts of other religions. (Seguin Decl. ¶¶ 3, 10, 12).

prejudice and consider the plaintiff's remaining claim.

## VI.   **Personal Involvement**

### A.   **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was

unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058 (GLS/ATB), 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

## B.    Analysis

Plaintiff claims that he was punished with keeplock because of his religious or "cultural" haircut. If true, his claim could rise to the level of a First Amendment violation, apart from any claim of "retaliation" for the exercise of his right to file a lawsuit about his religious practices or from any claim that his religion was treated differently than others or that he was "singled" out because of his religion. To the extent that such a First Amendment claim exists, it is clear from the undisputed records submitted by the defendant that he was not personally involved in either the decision to put him in keeplock because of his failure to comply with Directive 4914, governing DOCCS grooming standards, or to issue a misbehavior report based on his failure to do so.[8]

---

[8] Plaintiff never mentions the misbehavior report in his amended complaint. A copy of the misbehavior report is attached to defendant's exhibits. (Pflueger Decl. Ex. A). The misbehavior report notes that plaintiff was keeplocked because he did not show Officer Pflueger the court order, and Officer Pflueger believed plaintiff to be lying, after "further investigation." (*Id.*) While Officer

As stated above, defendant Sheftic encountered plaintiff once, long before the incident in question, and he merely told plaintiff that he would need to bring his haircut in compliance with the Directive. (Sheftic Decl. ¶ 4). No disciplinary action was threatened at that time. (*Id.*) Defendant further asserts that plaintiff did not mention his lawsuit, the court order, or his religion during the exchange. (Sheftic Decl. ¶ 5-6). Defendant states that CO Pflueger was the officer who issued plaintiff a misbehavior report, relating to his hairstyle and keeplocked him the same day. (Sheftic Decl. ¶ 8). Defendant states that he had no involvement in Officer Pflueger's interaction with plaintiff and did not direct Officer Pflueger "or any other subordinate staff"[9] to keeplock the plaintiff on August 29, 2018 for his hair or for any other reason. (Sheftic Decl. ¶ 9).

The facility records support defendant Sheftic's declaration. The August 29th misbehavior report and the keeplock records for the same day list Corrections Officer R. Pflueger as the officer who signed and ordered plaintiff to be keeplocked on August 29th. (Pflueger Decl. Ex. A, B). Plaintiff has failed to dispute the declarations of either defendant Sheftic or Officer Pflueger. Plaintiff has also failed to dispute the validity of the facility records submitted by the defendant which show no involvement by defendant Sheftic in plaintiff's keeplock placement. Thus, the plaintiff's amended complaint may be dismissed in its entirety because no other defendant is currently

---

Pflueger may have been incorrect in his assumption that plaintiff was not telling the truth, it is now clear why plaintiff was placed in keeplock on August 29th.

[9] Defendant Sheftic is a Sergeant and would be superior to Corrections Officer Pflueger and other Corrections Officers.

named in this action in connection with the incident described by plaintiff in his amended complaint as the basis for the First Amendment violation.[10]

## VI.   **Opportunity for Amendment**

### A.   **Legal Standards**

Federal Rule of Civil Procedure 15(a) provides that leave to amend[11] should be "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The court should exercise its discretion to allow amendment in the absence of reasons such as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . .'" *Miller v. Selsky*, 234 F.3d 1262 (2d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  *See Burt v. Rodriguez*, No. 05-CV-4493 (KAM/CLP), 2010 WL 11623399, at *2 (E.D.N.Y. Apr. 9, 2010) (discussing *Foman* factors).

The court must also examine whether there will be prejudice to the opposing party. See, e.g., *Ansam Associates Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery was completed and a summary judgment motion filed). Where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not

---

[10] Defendant also argues that the plaintiff's claims fail on the merits.  Based on this court's findings regarding exhaustion and personal involvement, the court need not considered the merits of plaintiff's claims.

[11] Rule 15 also provides for amendments "as a matter of course" in certain circumstances. Fed. R. Civ. P. 15(a)(1).  Plaintiff in this case, who has already amended his complaint once, is not eligible to amend as a matter of course and must obtain the defendant's consent or leave of court to amend. Fed. R. Civ. P. 15(a)(2).

an abuse of discretion to deny leave to amend. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citations omitted).

Generally, an amendment is futile if the pleading fails to state a claim or would otherwise be subject to dismissal. *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 103–104 (S.D.N.Y.2010) (citing inter alia *Health Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990)) (failure to state a claim); *Yves Saint Laurent Parfums, S.A. v. Costco Wholesaler Corp.*, No. 07 Civ. 3214, 2010 WL 2593671, at *2 (S.D.N.Y. June 24, 2010) (leave to amend based on futility may be granted where the proposed amendment has "no colorable merit).

In the case of proposed amendments where a party is to be added, the Court must also look to Rule 21 of the Federal Rules of Civil Procedure. *Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 248 F.R.D. 408, 412 (S.D.N.Y. 2008) (citations omitted). Rule 21 states that the court may permit a party to be added to an action "at any time, on just terms." Fed. R. Civ. P. 21.  Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y.1962) (internal quotations omitted).  Addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *Bridgeport Music, Inc.*, 248 F.R.D. at 412; *Fair Housing Development Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y.1972).

## B.    Analysis

In this case, as stated above, after the defendant made his motion for summary judgment, plaintiff filed a letter, asking for an extension of time to respond to the defendant's motion and to amend his amended complaint because "a declarant has taken ownership of civil rights violations of plaintiff [sic] and this information was recently discovered." (Dkt. No. 43).  Presumably, this request was made based on Officer Pflueger's declaration that he, not defendant Sheftic, ordered plaintiff to be placed in keeplock on August 29, 2018.  Defendant opposed the amendment. (Dkt. No. 44).  I granted plaintiff's extension request, but informed him that in order to amend his amended complaint, he must make a proper motion to amend and submit a proposed amended complaint. (Dkt. No. 45).  Plaintiff asked for another extension of time to do so, which I granted, with the same direction regarding a proper motion to amend. (Dkt. Nos. 46, 47).  Plaintiff has neither responded to the defendant's motion for summary judgment, nor has he filed a proposed amended complaint.

Apart from plaintiff's "motion," I will consider whether an amendment would be proper, sua sponte, given my findings on the defendant's cross-motion for summary judgment.  The court understands that plaintiff is pro se, and his filings must be treated with the utmost liberality.  However, the court also notes that on September 4, 2018,[12] in *Fox v. Lee*, 9:15-CV-390, plaintiff moved to hold Sgt. Sheftic (not a defendant in 15-CV-390) in contempt because he allegedly placed plaintiff in keeplock because of his

---

[12] September 4, 2018 was six days after the August 29, 2018 keeplock incident.

Mohawk August 29, 2018, notwithstanding Judge McAvoy's order in 15-CV-390.[13]
(Dkt. No. 200-1 in 15-CV-390).  On ***September 19, 2018***, the defendants in 15-CV-390
filed a response in opposition to plaintiff's motion for contempt, and included Sgt.
Sheftic's declaration, stating that he was not responsible for placing plaintiff in
keeplock on August 29, 2018. (Dkt. No. 203 in 15-CV-390).  In that declaration, Sgt.
Sheftic stated that plaintiff never showed him Judge McAvoy's order between August
20, 2018 and August 28, 2018, and in fact, had never shown him "any legal document."
(Sheftic Decl in 15-CV-390 ¶ 6).

Notwithstanding Sgt. Sheftic's declaration in 15-CV-390, on November 15,
2018, plaintiff filed the state court action against Sgt. Sheftic, which was removed to
the Northern District of New York as 19-CV-498 on April 26, 2019. (Dkt. Nos. 1, 2).  It
is true that in his 15-CV-390 declaration, Sgt. Sheftic did not identify the officer who
placed plaintiff in keeplock.  However, the documents filed by defendant in this action
(19-CV-498) show that Officer Pflueger's name was on the misbehavior report which
he gave to plaintiff on the same day that plaintiff was allegedly keeplocked because of
his hairstyle, and which plaintiff presumably still had on September 4, 2018 when he
filed the contempt motion in 15-CV-390 against Sgt. Sheftic. (Pflueger Decl. Ex. A, B).

When plaintiff amended the instant complaint on November 25, 2019, he did not
move to substitute Officer Pflueger as a defendant, and even at his deposition in the
instant action, plaintiff still maintained that Sgt. Sheftic placed him in keeplock. (Pl.'s
Dep. at 47).  Assuming that he did not know, or had forgotten who ordered him

---

[13] This is essentially the claim he makes in his amended complaint in this action.

keeplocked, he could have filed an action against a "John Doe" defendant and asked for discovery as to the identity of the individual.  Thus, while plaintiff is pro se, he is not a stranger to litigation, and he knew even before he filed this action in New York State Court that Sgt. Sheftic denied being the individual who ordered him to be keeplocked on August 29, 2018.[14]  Finally, although I allowed plaintiff two extensions of time to file his response to defendant's cross-motion for summary judgment and to make a proper motion to amend, he has failed to do so.  Thus, plaintiff's inordinate delay in moving to substitute the proper party in this action weighs against allowing plaintiff to amend his complaint a second time.

The court also notes that a motion to amend in this action will likely be futile because plaintiff has failed to exhaust his administrative remedies with respect to his retaliation and his equal protection claims.  It would not matter who was named as defendant, two of plaintiff's claims would nonetheless be dismissed as stated above. After a review of the facility records, it is questionable that plaintiff has exhausted even the remaining claim - a First Amendment Freedom of Religion[15] claim based on his placement in keeplock on August 29, 2018 since the grievance plaintiff filed was dated on August 27th.  To the extent that the August 27th grievance exhausted some First

---

[14] In his deposition, plaintiff maintains that he was placed in keeplock on August 30, 2018, but the facility records show clearly that the keeplock was ordered and implemented on August 29, 2018. This discrepancy in the dates does not change this court's analysis.

[15] Plaintiff's First Amendment Freedom of Religion claim is separate from any First Amendment Retaliation claim.  Plaintiff's religion claim was only that he was placed in keeplock because of his Mohawk hairstyle, while his retaliation claim alleged that he was placed in keeplock in retaliation for bringing 15-CV-390.  A defendant may violate an inmate's First Amendment Right to practice his religion, while not violating the inmate's right to be free from retaliation for the exercise of his First Amendment right to bring a lawsuit.

Amendment claim based on Judge McAvoy's order, the relevant conduct would have necessarily occurred prior to August 29, 2018.

In his grievance, plaintiff stated that he had shown "all the sergeants" his court order, and alleged that the officers were "harassing" him about his hair. He stated that the officers should "leave [him] alone about [his] hair." (Parmiter Decl. Ex. A at CM/ECF at 3). There was no mention of keeplock, nor could there have been since he was not placed in keeplock until two days after he signed the grievance. Thus, it is likely that even plaintiff's First Amendment religion claim would be unexhausted if it is related to his placement in keeplock "because of" his religious haircut and notwithstanding his court order.[16]

The court was not aware of the date of plaintiff's grievance until the defendant submitted a copy of the plaintiff's grievance as an exhibit to the cross-motion for summary judgment. Thus, any substitution of Officer Pflueger would be futile because the conduct of which he is accused which would have allegedly violated plaintiff's First Amendment rights was not the subject of plaintiff's grievance, and such claim would not be exhausted.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for summary judgment (Dkt. No. 29)

---

[16] To the extent that plaintiff would try to allege that his First Amendment claim involves "officers" verbally "harassing" plaintiff about his hair, which was arguably the only claim exhausted by the grievance, verbal harassment does not rise to the level of a constitutional claim. *See, e.g.*, *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) (McAvoy, J.) (citing cases). Judge Sannes dismissed any claim relating to verbal harassment in her order approving my report-recommendation after the defendant's motion for judgment on the pleadings. (Dkt. No. 13 at 6, 19; Dkt. No. 15).

be **DENIED**, and it is

  **RECOMMENDED**, that defendant's cross-motion for summary judgment (Dkt. No. 39) be **GRANTED**, and plaintiff's complaint dismissed **WITH PREJUDICE**.

  Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: November 24, 2020

                Hon. Andrew T. Baxter
                U.S. Magistrate Judge